Appellate. Arguing for the appellate, Mr. Anthony Argyris. Arguing for the appellate, Ms. Christine McPhee. Mr. Argyris. Thank you, Your Honor. May it please the Court, I'm Anthony Argyris and I have the honor of appearing today on behalf of Plaintiff Appellant Stanley Olson, who's also here in the gallery this morning. The circuit court error which brings us here today is a failure to apply the fundamental rule that competent circumstantial evidence is sufficient to create a material fact question precluding summary judgment. The facts of this case are that on October 20th, 2006, Mr. Olson along with two other firefighters were summoned to the Williams All Seasons premises in response to a trouble alarm. It is undisputed that the trouble alarm is a non-emergency. This is basically an instance where there was an indication that there was a problem with the alarm system as opposed to a fire or other emergency situation. And when they arrived at these premises in the early morning hours of that date, they entered the premises through a device called a Knox Box. And Knox Box is basically... Counsel, we're fairly aware of the facts that are contained in the briefs that are cited to the record. We're aware of what a Knox Box is and we're aware that a police officer an hour after the event tested the gates and so on and so forth. Very well. So why don't you get to the point of what is or are the material issues of fact which preclude summary judgment. Sure. The material issues of fact are how did Mr. Olson get to the location where he was injured and then how was it that he went from entering the premises along with his two fellow firefighters to where he was found at the bottom 11 feet 7 inches below where this gateway is. Now Counsel, Mr. Olson doesn't have any recollection at all of how this occurred and nobody actually saw him fall or get to that point. And there's no testimony of how the gate operated at the particular time the accident occurred. So wouldn't all of this actually support the findings since there really is no evidence of how this occurred or approximate cause? Wouldn't this support the finding of summary judgment? I disagree with the premise of the question because Mr. Olson testified that as he entered the darkened area, which corresponds with the warehouse as described by his coworkers, and we know from his coworkers that he was entering the warehouse along with them, that he turned to his right to find a light switch and the wall that's there is next to the gateway that's the subject of this lawsuit. And what he says is that as he turned to reach for a light switch on this wall, he made a pivot movement. As he did, he sensed something come in contact with his right leg. As he was reaching along and doing this pivot movement to his leg, the next thing he remembers is striking his head. So this is not a case where Mr. Olson has no recollection as to what happened. It's a case where Mr. Olson places himself at the precipice by his testimony or where at the very least the trier of fact could conclude that that testimony places him at the precipice because one must recall, he's coming into the building literally in line with his two coworkers. They are walking into this dark warehouse where they are the only three people, where business is not in operation, where it is otherwise silent. And this gate, which was tested as soon as was reasonably possible, very soon after Mr. Olson had been packaged and removed from the premises and transported to the hospital, which was tested and documented by three police officers, including Sergeant Weaver, Officer Ranch, and Officer Dorsey, was found to be in a condition where it was capable of remaining open exactly in the manner that would lead Mr. Olson to that precipice. And Sergeant Weaver testified to that, that the angle of the open gate, where it would remain in contact with this little shelving unit, if you were to follow that, it would take you right over the precipice. So no, this is not a case where there's no testimony as to how Mr. Olson was injured. Was the lack of light or illumination have anything to do with this case? Yes, it does. And to answer that question, we need only look at the Williams agent's testimony, who acknowledged that they were well aware that because of the Knox box, this was the area where police and fire would enter that building, that they would enter it during times where it was not light outside, that they would not know where the light switches are, and that they would come through this very same area. And the first gateway that they would come in contact with would be the one where Mr. Olson was injured. They acknowledged that security lighting was necessary, and they went to the effort of placing some security lighting there, which was this single bulb, some 25 feet, 17 feet, you know, 25 feet away, 17 feet up, and I think 12 feet laterally from the position of this gateway. Did the trial court find there was no duty to illuminate? I don't think that's clear from the record. I think what his Honor stated, what Judge Stark stated, was he was unclear and did not know whether there was such a duty, and then he went on to find that there was no proximate cause. If to whatever extent there was a finding that there's no duty, I think that is absolutely an error. The case that we cite on the point, I think the best case is probably Dunkovich versus Allen. Dunkovich tells us that, you know, lighting in association with other facts and circumstances, inadequate lighting, failure to provide lighting can be a basis for liability. In this particular case, all of the circumstances that are taken into consideration in return. There was the last time I believe somebody of emergency services was on premises was 10 years prior. So you're saying that they should have had a light on for 10 years that was brighter than the 100-watt bulb? I believe… In anticipation of someone coming to the area? I don't believe that security personnel or emergency personnel entering the premises are the only reasons for security lighting. They acknowledge the need for security lighting as a matter of safety. So, for example, if the building is in operation and the main lighting should go out for some reason, having adequate security lighting there serves a purpose, another safety purpose, in addition to providing lighting for security personnel. So we know that security lighting is present in many, many commercial properties, and it's not just for emergency personnel. It's also for other people that may be in the premises when main lighting is, for one reason or another, not operational. So if the light had been properly illuminated, would there have been liability based upon the fact that the precipice was open and obvious, or wasn't it open and obvious? Well, I think it's speculative to know. If this area was extremely well lit, then I think Mr. Olson would be in a position to be much more cognizant of where he was and what lies on the other side of that gateway. Your argument is it can't be open and obvious if you can't see it. Yes, Your Honor. If you could see it, then it's open and obvious. Then it's open and obvious, yes. I mean, there may still be, for example, the open and obvious doctrine has its exceptions. One of them may be the voluntary encounter situation. These particular premises, and this gets kind of beyond the issues because open and obvious was not in the trial court. Open and obvious was mentioned here. But open and obvious gets us a little beyond what we've talked about in the briefs, but there's actually a white wall that starts at ground level that proceeds out into nothingness. So if you don't have very good lighting, you could easily open up that gate and think that there's a floor attached to the wall and keep going much to your, you know. Is it normal for firemen, when they go on premises and they entertain darkness, not to have some sort of their own portable lighting device or a flashlight? Your Honor, Mr. Olson has acknowledged not having a flashlight. It goes to the subject of contributory negligence. I think similarly. Probably comparative negligence? Comparative, yes, comparative negligence. I think similarly, you know, where we're talking about the gateway and if there's illumination and if he went through the gateway, depending on how adequate the illumination, that might speak to comparative negligence as well. But I don't think it goes to open and obvious so long as the voluntary encounter exception would apply. Again, had that issue been raised below, then we would have dealt with that a little differently because actually Dr. Fagel does address that situation with the wall, as I was describing earlier to Justice Burkett. I think the real issue and why this summary judgment order needs to be reversed is you don't see any analogous situation in any of the cases that have been cited by any of the parties. The cases that have been cited by the defendants basically fall into two categories. One is the unwitnessed death cases where there's no live plaintiff to testify as to how or why they were injured. And then you have the unwitnessed, I don't remember anything about how I was injured cases with no witnesses to give you any background data. So let's talk about, I think Keating might be the best of the cases to talk about, maybe the best case on the defendant's side. And Keating is the one where we have the man who's in the process of demolishing or removing a porch, a wooden porch. And he cannot tell us whether or not he had removed a nail or what have you or whether he just stepped on the porch and by its own, you know, failure of support fell. If in Keating what we had was another witness saying when Keating got out on the porch, and let's add one more thing. If Keating says, when I got out on the porch, I don't remember using any tools. I had not gotten to the point where I used any tools. Just as Olson says, Olson doesn't say he opened a gate. And neither Peace nor Seidel says he opens a gate. And that leaves, I think, a question of fact is then the gate must be open. It didn't happen by magic. But so if in Keating, for example, he said, well, I just got out there and I don't remember having used a tool. And then maybe an occupant within the building says, and I didn't hear any, you know, I didn't hear any pounding. I didn't hear any sound of a nail, you know, being removed as you hear that kind of creaking sound of a nail. I didn't hear anything like that. And it was moments later that we have Mr. Keating on the, you know, having sustained his injury. I think you get to a different result. We have many more facts in this case as compared to Keating. We have facts where we know that Mr. Olson is entering these premises. We know where he went. And I think the statement, and this goes to the point that Justice Zinoff had mentioned earlier, I don't believe it is fair to say that Mr. Olson has no memory of how, of what happened. There's one place where they say, they showed Mr. Olson a photo in his deposition and said, do you remember going through that entryway? And it's one of the doorways that you go through to get to the location where he was injured. He says, no, I do not. Let's remember, Mr. Olson went through that area one time while it was dark. Then he was injured. Then he was packaged and removed while flat on his back and had a lot more things on his mind, I'm sure, than what is the configuration of this building while he was being removed. Every other witness to the case had a chance to see this building multiple times while after it had been illuminated. So, yeah, they have a better recollection of the actual configuration. Mr. Olson's testimony, though, first of all, the two other witnesses tell us Mr. Olson went into the warehouse. It's not magic that he ended up at the 11 feet 7 inches below and that he was right there with them. Did the trial judge find that there was no proximate cause or that you could prove what cause the accident was? I think the fair interpretation of Judge Stark's order was that there was inadequate evidence to create a material fact question on proximate cause. And there is no case whatsoever where we have witnesses who are putting the plaintiff where he was injured, where we have the absence of sound, which the Rerack v. Kelly case tells us can be material. In that case, it's a rear-ender dead man's act. We've got a problem because now the plaintiff can't testify to what happened because you've got a deceased defendant. And one of the things he was able to say is there was no sound before this impact because that came in around the dead man's act. And that was pertinent to create a material fact question. Now, if you want to finish your thought or else I had another question. Well, I think in totality you have other witnesses helping tell us where Mr. Olson was and what was happening. They hear no sound when this gateway makes a sound according to the testing that was performed as soon as reasonably possible after this incident. We have Mr. Olson's testimony about his sensation and what he was doing and the configuration of the building, which only makes sense. He said, I only reached for a light switch once. And when I did, I felt something come into contact with my leg. And the next thing I knew, I was ‑‑ I struck my head. Next after that, I'm looking up from below. Now, does the fireman's rule as discussed in Horn apply here? And if not, why not? And you also discuss the Rush or Roosh case as well and seem to have an opinion as to what Roosh did. Maybe you can expound on that. Yes, I do. Thank you, Your Honor. First of all, as to Horn, I don't think that even reading Horn to be good law that it applies because we acknowledge there's no emergency. And the common law, fireman's rule, presupposes that there's an emergency. In addition to that, it presupposes that there is some false or not. I mean, a false emergency still can comply, I think, with Horn because we see sort of a false alarm in Horn. It's not a real fire. It's not a true ‑‑ He thought it was an alarm. But he thought so. That's exactly correct. But he thought so. So the reasons for the rule are applied. But then there's also a nexus because Horn is there because of this alarm that's malfunctioning. But it's malfunctioning because of the water coming in the building, which ultimately injures him. So it's not an independent cause anymore. But really, the Horn case is decided based on this professional activity test. The Horn case is decided based on that kind of analysis and based on out-of-state authorities that are applying that kind of analysis. Now, is that no longer good law here in Illinois? I don't believe it is. I think that the Rush court, this court in Rush, makes clear why it isn't. And the holding in Rush makes clear as well that Mr. Olson would not be encompassed by the fireman's rule. Any other questions? Thank you. Thank you for an opportunity to make your vote. You're welcome. Ms. McHarg? Good morning. May it please the Court, Your Honors. My name is Christine McTighe. I'm here for the defendant. Sitting at counsel table with me is Colleen Shield, trial counsel in this case, who does have an appearance on file. The trial court in this case bases ruling on the fact that there was no evidence of proximate causation. That is what Judge Stark ruled. And I'm glad that Counsel for the Plaintiff mentioned the Keating case because I think the Keating case is quite instructive here. As we know in that case, Mr. Keating went out to remove a balcony with some pickets. He fell through three stories and fell onto a wrought iron fence. Similar to this case, there were two people there, the Gropinski's father and son, who said similarly to the firefighters here, he was there and he was gone. And that's what firefighters Pease and Siebel said here. They didn't see what happened. They used their other sense, though, which is their sense of hearing. And it wasn't disputed that the gate, all the testimony was that the gate made noise when it was open and they heard no noise, despite being in close proximity to the plaintiff. To the gate, right. There is testimony that that gate did make a noise. However, as we've pointed out in our brief, there is no evidence here that the gate played any role in Firefighter Olson's fall. There were three people there at the time, the three firefighters. And the point we make in our brief is no one is ever going to be able to say what happened. Unfortunately, Firefighter Olson has no memory of the fall. Firefighters Pease and Siebel did not see him fall. I believe it was Siebel's sense team was gone. And when they turned around, their officer, Firefighter Olson, was lying on the floor of the warehouse. So similar to the situation in Keating, there were three people there and there were three people who were at the scene. But just as in Keating, the person who fell has no memory of what happened. And the two other witnesses who were there did not see what happened. And any guess as to what happened is just that. It's a guess. You can guess where the gates opened. You can guess where the gates closed. You can guess did somebody fall over the railing. That's all it's ever going to be because nobody is going to be able to come in and say, I was there and this is what happened. And this is not a situation where at the time of the summary judgment motion, Plaintiff's counsel came in under Rule 191 and said, I need more time. I think I have another witness. Would you please give me extra time to defeat this motion? How do you distinguish between guess and circumstantial evidence, which are some of the things that counsel and Justice Burkett just talked about, a noise, et cetera? Some of the factors that he mentioned, why are they not pieces of circumstantial evidence as opposed to, quote, guess? Right. The court was confronted with that same issue in Keating. And the court said in that case, it is just guess because none of it can be connected to the fall. And that is the point here. I think everything here focuses on the gate. I don't think there's been any testimony about the railing. It's the gate that's at issue. And there's no evidence here. You can say the gate made a noise. You can say the gate closed. Officer Rash said it didn't close all the way. Mr. Williams came back later in the day and said, no, it worked just fine. There is conflicting testimony at the gate. However, there is no evidence here that Firefighter Olson touched the gate, that he came into contact with the gate, that he fell over the gate. There's just nothing here to connect that gate with his fall. I would say I'm trying to think of something that would connect him. There's nothing in the record. Perhaps if he said, you know, I reached out and I touched it. And remember, the gates don't open out. They only open in for the forklift. I suppose if he said, I reached out and touched it and I started to grab it, or I think I did that, or something along those lines to connect his presence with the gate. But there just really is nothing here. And that's why I believe it's nothing but speculation as to what happened. And that's what one of the firefighters said later, his deposition. That's all we're talking about here. He said, we're talking about where the gates open, where they close. If he fell and the gate was open, would that be evidence of proximate cause? If the gate was open at the time? Yeah. If there was evidence saying they walked in and the gate was open? Well, I think the theory of the case is that the gate was open. The gate was supposed to be closed because it was supposed to have an auto-close mechanism based upon either gravity or spring tension. And that it wasn't closed, and therefore the spring mechanism wasn't properly maintained. And if it was closed where it should have been, he wouldn't have been able to fall where he fell. Ergo, it had to be open. And if it was open, why was it open? It was open based upon the police officer's testimony that there was some problem with the thing closing all the way. And so was it open all the way or was it only open partially and he walked between or he walked through the only open space that was available? Because as the things swing open, the opening can get bigger, I would assume. I don't think it's always closed or always open. So that's what I gather was the theory of the case. And the pivotal thing seems to be that since no one heard the noise that was generated when the gates swing either open or closed, it meant that the gates had to be in a given position. If it was closed, then he couldn't have fallen. Ergo, it must have been open. And if it was open, then maybe it should have been. I think if there was some evidence here that the gate was open no matter how much, I think this would be a very different case on summary judgment. But there is no evidence the gate was open. And I think you can speculate all you want that it made a noise, it didn't make a noise, it closed when I said it did, it didn't close. Nobody knows what the position was when they all walked in. And there just is simply no evidence at the time of what the position of the gate was. So I think, I believe that is the difference here. There was no, nobody saw it. Mr. Williams didn't say, oh, yeah, that gate's always open. You know, there just was no evidence here that it was. What about the, did the trial court find that there was a no duty relative to elimination? What's your take on whether the trial court found that there was no duty to eliminate? I don't remember Judge Stark's exact words, but I want to say he said something along the lines of, I'm not convinced that there is this duty basically to leave a light on 24-7. Whatever the words he used, and I'm sure I'm misquoting him, he did not rule on the matter of duty, but he expressed doubt as to whether there was the duty on lighting that the plaintiff contends there was. And there's no dispute that this building had light switches. And I'm not aware of any case, and I don't know of any precedent that says you have to somehow leave your lights on 24-7 in order to create this duty on lighting that the plaintiff contended. Would you agree that when we talk about duty, we look at all the facts and circumstances, and if there's a dangerous condition on the premises that can be rectified temporarily by providing lighting, that you should have lighting? Would you agree that there's a duty in that situation to provide lighting? I believe there's a duty in that situation to provide lighting when the condition you are trying to warn against is something that requires a new law of warning. So is it, I suppose, is it a pit? Yes, you should. But there was lighting here. This is not the situation, for example, in these parking lot cases that used to come up with unnatural natural accumulations where there was very dim lighting with these street lights. I'm sorry. Did anybody take any photographs based upon light meter measurements as to what the level of lighting was? Not that I'm aware of, no. Because if you take a properly exposed photograph, it won't show you what the level of lighting is. Correct. And I have. I brought them with me. I have photographs on the record which I can say I don't think are very good, but I don't think they would show what the lighting is. Did anybody take a lumens test to determine what ambient light there was with a photo meter? If somebody did, I'm not aware of it. If I'm permitted to ask my trial counsel. Feel free. They did? Okay. I guess she said they did. We didn't present any such evidence in the trial court, however. So obviously that's not in the record. But just to finish what I thought about these parking lot cases, those are these situations where you have poor illumination with a forehead light, obviously which the plaintiff has no control. The parking lot lights are what they are versus the interior of a building where I think nine times out of ten there's going to be a light switch. And I believe that is the extent of the duty is to provide lighting, and lighting was provided here. Was there a light switch from the entrance where they gained entry prior to where he fell? I'm not aware of one. The firefighters all testified that they were to the left. I believe it's Officer Pease who testifies to that. But, no, there was obviously the Coke machine. The point I'm getting at is if you walk through a door and you're now in the building and there is a light switch, and there are light switches that stay lit in the sense that when they're off they're on, the switch actually has a neon light in it or an LED. So it shows up like a beacon. Now, if that is closer than the precipice, then is there a breach of duty relative to here is a light switch, is the injury proximately caused when you, quote, unquote, explore in the dark when there's a light switch that you can see when you walk through the door? Well, Your Honor, you're asking me proximately cause or duty. I'm sorry. I lost my train of thought. If the light switch is within close proximity of the door and one passes that and starts exploring in the hinterlands and falls with or without the light on, is there a proximate cause? Well, I don't know if I can answer that in a vacuum because I think in that situation that has to be resolved as a duty question because I don't think in that situation you'd have to first say you have to have the light switch here or it has to be an illuminated switch or there has to be something that says there's a light switch and you didn't do it. For example, your light switch was broken or the sign fell down. If there were that duty in that situation, the landowner did not do that and the person fell, then I'd say perhaps, yes, there is an issue regarding proximate cause because you didn't fulfill your duty. But I'm not aware of a duty here as far as light switches go that is an issue. How does the Clark case support your argument that there was no testimony about how this accident occurred from anybody right at the time that it occurred? There in Clark something malfunctioned, correct? And there was testimony about the condition of that the day afterwards? Right. But this case is different. There was testimony within an hour or two after the accident occurred about the gates, correct? Yes, there was. That was from Officer Rash, the police officer, and all I can say in response to that is what I said before is at best that's going to create a question of fact, which obviously is not something I think occurs here, but Mr. Williams said they were working just fine. And this gets into, I believe, the subject of post-occurrence testing. In our brief, we focused on Officer Siebel's testimony from 10 years earlier, but even with the testing that was done after the accident, there are certain conditions that have to be met in order for such testing to be admissible. Now, we didn't challenge, obviously, Officer Rash's testimony. He did what he did. But, again, this gets to the proximate cause issue, which is was the gate even involved? Is this testimony regarding the gate even pertinent at this point? Because is there any evidence that the gate was involved in the accident? There's no question. I'm not disputing what Officer Rash testified to or what he did or what he found. That's in the record. That's the way it is. But I don't think it's relevant here because of the proximate cause issue. How does he fall if the gate is not either opened or not functioning properly? How does he fall? Where's the argument that explains the fall? As we set forth in our brief, did he step onto the fence to try to think there was a light switch there? Did he step onto the fence or gate to reach up to something? His testimony was that he didn't, that his light was touched presumably by a portion of the open gate, and then he stepped and fell. I mean, where's the argument to the contrary that there's a rational explanation for the fall, but for the malfunctioning gate? I guess, Justice McLaren? I think put another way is how the assumption that Justice Burkett and I have made in some of my questions is it would seem that the gate, if it was properly engineered and designed, was supposed to, when it's closed, prevent someone from falling over the edge. Now, if that assumption is wrong, then you win because even if the gate was closed or open, it wouldn't make too much difference. The next question would be, did they reach their duty by not putting in a gate or a fence that would have prevented the fall? So, was there anything to indicate that this gate was so poorly engineered or designed or constructed that any person of average height and weight could have fallen with the gate closed? I can't rely on what I know that is not in the record. But what is in the record is there's no evidence or testimony of who could or could not have fallen over that gate if it was closed as far as height, weight, any type of mechanics like that. No, there is not. I know my time has expired, Justice. Do you know if I had one comment about the firefighter's rule? Yes. Justice Stark in this case did not base his ruling on that rule. There is the horn case, which I believe is still good law. But I think in all candor, I must say to keep in mind that there is the new statute. And there was an effect at the time of this accident. Thank you. Any other questions? Thank you. Thank you. Mr. Archeros? Thank you. I think in sum and substance, looking at the RERAC case for a moment, the argument that I'm hearing from the defendant as to the sound issue is basically this. Well, if there had been any evidence that the defendant did not apply his brakes before the defendant, the decedent defendant had not applied his brakes before the impact, well, then there would be evidence to suggest that there's a question of fact on negligence. But what the court held instead was that the absence of sound was a piece of evidence that was sufficient to create that material fact question. So trying to make it into this circular argument, well, there's no evidence of negligence, so then how could the sound be relevant? The evidence of lack of sound itself in RERAC and in this case with three firefighters in close proximity to each other in an otherwise unoccupied and, you know, nothing's going on in that warehouse, in the dark, where you could have heard a penny fall on the floor and roll away. None of them heard a sound. Was there any testimony of that? No. But what you have is three people in an unoccupied warehouse, Your Honor. Okay. Well, I was just trying to find out whether or not that was actually evidence containing a record or argument. Well, what we know is it was dark, it's unoccupied, and this is a cement floor warehouse. And I think that common sense tells us that's a place that's going to echo. There was no evidence that there was outside noise. There was no evidence of anything like that, nor was there any evidence that any of the three firefighters had a problem with their hearing. They were within arm's breadth of each other. Well, was there any testimony that while inside they talked and they could actually hear themselves? Yes. Such that they've now established that there's a baseline of auditory sensation and the capability of hearing? Yes, absolutely. That was the only thing that they heard was their own conversation. That's exactly what the testimony was, Your Honor. I think when we look at the cases again, the Wade case that comes up, because it distinguishes, I think, the Monaghan and Keating case, or Geelan, no, the Bakken and Geelan case, if I remember correctly. Wade tells us a lot about this case, because Wade is a situation where we have this driver who does survive and cannot recall getting to the exact place of the collision, but says, I'm driving on the roadway, and he places himself in a position where he's approaching where the collision occurred and then has no further, is not able to give us any further testimony. Then the police officer comes and sees barricades that are knocked over, sees a hole in the roadway, and that is sufficient to create a material fact question. That should support the verdict that was then entered for the plaintiff. So Wade distinguishes these other cases. Wade has much less evidence to create a material fact question than this case has. This case has two live witnesses right there telling us where Olson was. This case has a documented defect in the premises. This case has the absence of sound, where sound would have been, I believe, at the very least, where the trier of fact would conclude that sound should have been heard by these three people in this dark, otherwise unoccupied warehouse. So I think that when you consider Wade, in contrast to the other cases, and then the abundant evidence in this case to put us where Mr. Olson is and why he was injured, and it does, I'm happy to say, I think that the point has been articulated, that the lack of sound is evidence that the gate was open. And Mr. Olson's testimony about how he was injured and his sensations are entirely consistent with an open gate. You're not going to come into contact with an open, a gate that's already open. There was a question about the height of the gateway itself. We're not critical of the height of the gateway itself. However, there was one other point, again, we're kind of getting into negligence issues as opposed to proximate cause, but there was some testimony about a latch, that there should have been a latch on the gate according to OSHA regulations, and that was something that Dr. Fagel noted. So to the extent that the court is interested in defects in the gate other than being able to remain open, that was another issue. I suppose one could look at the Collada v. Anheuser-Busch case, where the court said, well, there should have been a handrail on both sides, and because the handrail was only on this side, then the plaintiff went and encountered this icy condition or whatever it was that was injured. If there had been another handrail, then perhaps you would have used the other side. I think, again, you could say the Trier effect, if they're permitted to say that that's causal nexus there, there would be a causal nexus here if there's no latch, which also should have been there. I think the same argument applies with respect to the striping tape. There's been a dispute about the visibility in the warehouse. If it was dark and there was no duty to illuminate and the tape wouldn't have prevented the fall but merely would have put it on notice, how did this have anything to do with being anything other than a condition? Well, I think in this way, because Pease and Seibel both testify, and it's unclear as to who has the flashlight when, but there is a flashlight in the room. And so I think the defendants actually mischaracterized Pease's, Seibel's testimony that he could see his feet. I think he's really talking about an entryway before the warehouse because he can't square that up with the it was dark, dark, dark. Was that Seibel's feet? No, he was – Pease, I believe, was – I'm sorry, Seibel, rather, was saying he could see his own feet, but he was talking about a different point in time than when he was in the warehouse. But if they flashed the light – and remember, Seibel and Pease are ahead of Bolson. So if they've been flashing the light, as we assume they were, and they've seen some striping, that may have changed their conduct. Again, you know, Collada v. Anheuser-Busch is the authority that I would cite for that because we do see how evidence was permitted – the evidence of lack of the handrail on one side where it should have been there, the prior effect was permitted to conclude, conduct would have changed had that device been there. I think similar, the jury would be entitled to conclude that striping, had it been seen by one of the people using the flashlight, may have changed the outcome here. And literally, all you need would have been if one of the flashlights had happened to go this way. I mean, it was the unfortunate circumstance. Pease goes straight, Seibel goes left, Bolson goes right, looking for the light switch. If that had been changed in any way, there would have been probably a different plaintiff here or maybe in some way the incident of injury would have been avoided. Any other questions? Thank you. We'll take the case under advisement. Court is adjourned.